**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE:  AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2873<br><br>This Document Relates to:<br>*State of Wisconsin v. 3M Company et al.*,<br>Case No. WIW/3:22-cv-00412 |

**MEMORANDUM OF LAW IN SUPPORT OF THE STATE OF WISCONSIN'S
MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-99)**

The State of Wisconsin ("the State") respectfully submits this memorandum of law in support of its Motion to Vacate Conditional Transfer Order No. 99 ("CTO-99"), pursuant to Rule 7.1(f) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation.

## <u>INTRODUCTION</u>

The State of Wisconsin opposes the transfer of its case to this multidistrict litigation ("MDL"), No. 2873, brought in state court against defendants that manufactured, marketed, and sold PFAS-containing products ("PFAS products"), including a subset of defendants that manufactured aqueous film-forming foams ("AFFF") containing the chemicals PFOS and/or PFOA. The State's complaint[1] alleges geographically widespread contamination, ranging from impacts to large bodies of water to specific sites where contamination has been detected and documented. Its assertions are based in state common law claims and are brought pursuant to the State's *parens patriae* authority.

While the Judicial Panel on Multidistrict Litigation ("the Panel") has generally regarded such statewide *parens patriae* cases as proper for inclusion in the MDL (*see*, *e.g.*, ECF No. 384 (order transferring the States of New York and Ohio to the MDL)),[2] the State's case as explained

---

[1] The State's Complaint is attached as "Exhibit A".

[2] Unless otherwise noted, all cites to ECF are to the MDL's docket.

herein is distinguishable, as only a subset of the allegations and impacts measured to date are currently attributable to AFFF as compared with other cases. The State's case also extends far beyond AFFF use and contamination, an extension reflected in the complaint. As such, the State is seeking to vacate this Conditional Transfer Order ("CTO"). Moreover, the State filed its action in Wisconsin circuit court seeking remedies under Wisconsin law for Wisconsin-based claims. Defendants Tyco Fire Products LP's ("Tyco") and Chemguard, Inc.'s ("Chemguard") (collectively "Tyco Defendants") removed this action to the Western Division of Wisconsin. However, federal jurisdiction has not been established, and the State asserts that it is not proper; the State is currently seeking remand to Wisconsin state court.[3] The briefing on the remand motion will complete either before or virtually concurrently with this briefing regarding the appropriateness of transfer; the allowance of time for the Western District of Wisconsin to decide remand is not an undue delay, but rather a short duration to see if this case will remain in federal court. Thus, in the alternative, the State seeks to stay the Panel's decision regarding this Motion to Vacate CTO-99 (and potential transfer if the Tyco Defendants can establish jurisdiction before the Western District of Wisconsin) such that its effective date follows the Western District of Wisconsin's resolution of the remand motion.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

The State filed its complaint in the underlying action on July 20, 2022, in Wisconsin Circuit Court in Dane County, Wisconsin, against manufacturers of PFAS products, including AFFF, containing PFOS and/or PFOA. *See State of Wisconsin v. 3M Co., et al.*, No. 3:22-cv-00412 (State of Wisconsin Circuit Court, Dane County, No. 2022CV001795). The State asserts claims under Wisconsin common law, including continuing public nuisance, continuing private nuisance,

---

[3] The State will file its motion to remand one day after this Motion to Vacate is filed.

continuing trespass, negligence, strict products liability: failure to warn, and strict products liability: design defect. The State brought its case pursuant to Wis. Stat. §§ 14.11 and 823.02 and its *parens patriae* authority.

The Tyco Defendants removed this case to federal court in the Western District of Wisconsin on July 27, 2022. *Wisconsin v. 3M Co., et al.*, No. 3:22-cv-00412, ECF No. 1 ("Notice of Removal").[4] They assert two grounds for removal: first, the federal officer defense as a federal government contractor for the manufacture and use of AFFF meeting military specifications ("MilSpec AFFF"), and the "federal enclave" defense in response to the inclusion of Fort McCoy in Monroe County, Wisconsin in the State's complaint; a current U.S. Army installation. Notice of Removal ¶¶ 3-4.

Conditional Transfer Order No. 99 was entered by the clerk of this Panel on August 3, 2022, following a Notice of Potential Tag-Along Action field by the Tyco Defendants and seeking to include this matter in the MDL before jurisdictional issues have resolved. ECF No. 1512; *see also* JPML R. 7.1(b); *and* David F. Herr, *Multidistrict Litigation Manual* § 4:24 (May 2022 update). Briefing on this Motion to Vacate the Conditional Transfer Order will be complete on September 22, 2022. On August 18, 2022, Tyco Defendants filed a motion to stay proceedings in the Western District of Wisconsin pending this Panel's decision to transfer this matter to the MDL, a move to which the remaining sixteen Defendants consented. *Wisconsin v. 3M Co., et al.*, No. 3:22-cv-00412, ECF No. 10, at 2 ("Motion for Stay").[5] The State is also filing a motion to remand back to state court in the Western District of Wisconsin.

---

[4] The Notice for Removal is attached as "Exhibit B".
[5] The Motion for Stay is attached as "Exhibit C".

The Tyco Defendants' removal of this matter is predicated on the identification of three specific sites for the purposes of raising the federal enclave defense, and the MilSpec AFFF requirements for an additional four sites in raising the federal contractor defense.[6] Notice of Removal ¶¶ 21-22. While contamination resulting from the use of AFFF is a part of the State's case, it is does not predominate the issues or currently known PFAS contamination as alleged in the Complaint. AFFF is a fragment of the overall PFAS product family, and likewise exists in such form in the State's case: a relevant, but distinct subpart. To date, the State has identified PFAS contamination at a variety of sites and from a variety of sources – of which only subset stem from AFFF use. As such, inclusion of the State's case in the MDL is inappropriate.

## LEGAL STANDARD

For transfer of a matter to an MDL to be proper, the actions must share common issues of fact, transfer must be for the convenience of the parties and witnesses, and transfer must advance the just and efficient conduct of the actions. 28 U.S.C. § 1407(a); *see also* David F. Herr, *Multidistrict Litigation Manual* § 5:3 (May 2022 update). Ultimately, these requirements comprise the "bare minimum" for the consideration of the transfer of a case; the mere presence of these factors does not automatically render a matter appropriate for MDL inclusion. *See* David F. Herr, *Multidistrict Litigation Manual* § 5:3 (May 2022 update). The Panel must look at each case individually and carefully, as "[t]he point at which the advantages of continuing to transfer tag-along actions outweigh the disadvantages is never absolutely clear, and will necessarily vary

---

[6] The three sites on which the Tyco Defendants base their argument for removal are referenced in the State's complaint. The State, of course, did not list all impacted sites and/or natural resources in its complaint; rather the sites included by reference are examples of currently known impacted areas of the State.

depending on the circumstances of the particular MDL." *In re Checking Acct. Overdraft Litig.*, 818 F. Supp. 2d 1373, 1374 (J.P.M.L. 2013).

## ARGUMENT

I.   **This Action Should Not be Transferred to the MDL Because None of the Requisite 1407(a) Factors is Met.**

A.   **Individual Questions in the State's Case Will Predominate Over Common Questions of Fact.**

The first requirement for the transfer of a matter to an MDL is that the actions must share "common questions of fact." 28 U.S.C. § 1407(a); *see also* David F. Herr, *Multidistrict Litigation Manual* § 5:3 (May 2022 update). Where "individual facts in the[] actions will predominate over any alleged common fact questions," the transfer of a specific case to an MDL may not be appropriate. *In Re: Abbott Labs, Inc.*, 763 F. Supp. 2d 1376, 1376-77 (J.P.M.L. 2011). Likewise, when one case has "significantly greater breadth than the others," transfer to an MDL is not appropriate. Wright & Miller, 15 Fed. Prac. & Proc. Juris § 3863 (4th ed.) (Apr. 2022 update); *accord In Re: Hamilton Bank (of Atlanta) Securities Litig.*, 438 F. Supp. 940, 941-42 (J.P.M.L. 1977); *see also In Re: Credit Union Checking Account Overdraft Litig.*, 158 F. Supp. 3d 1363, 1365 (J.P.M.L. 2016).

The creation of this particular MDL was predicated on a set of distinct factors; namely: "AFFF products used at airports, military bases, or certain industrial locations caused the release of PFOA or PFOS into local groundwater and contaminated drinking water supplies," the same named manufacturer defendants raising the same federal defenses, "factual questions concerning the toxicity of PFOA and PFOS and their effects on human health; the chemical properties of these substances and their propensity to migrate in groundwater supplies; the knowledge of the AFFF manufacturers regarding the dangers of PFOA and PFOS; their warnings, if any, regarding proper

use and storage of AFFFs; and to what extent, if any, defendants conspired or cooperated to conceal the dangers of PFOA and PFOS in their products." *In re Aqueous Film-Forming Foams Products Liability Litigation,* 357 F.Supp.3d 1391, 1394 (J.P.M.L. 2018) ("*In re AFFF*"). Importantly, the panel notes that "all the AFFF actions involve the same mode of groundwater contamination caused by the same product." *Id.* at 1395.

As currently pleaded, the State's case is not a predominantly AFFF case; the allegations reference a subset of exemplar sites currently identified as being impacted and contaminated by AFFF versus contamination from PFAS products at large; "[n]o corner of the State has been left untouched." Compl. ¶¶ 10. PFAS comprise a wide range of chemicals and go into thousands of different products and different industrial processes; AFFF is one product in this vast chemical family, and far from the only PFAS product used within the State of Wisconsin. In the State's inherently unique matter, individual questions and facts stand to predominate as opposed to the cases currently included in the MDL (and being advanced substantively for the foreseeable future). Matters that the Panel has routinely transferred are limited in scope to a single, or small handful, of AFFF-only sites despite being brought by state actors, and allege additional impacts from non-AFFF PFAS solely in a speculative nature. *See, e.g.,* ECF No. 269-1. Contrastingly, the State's case has been pleaded with specific, exemplar facts pertaining to statewide impacts and contamination impacts in which AFFF claims comprise only a minority; not merely potential or anticipatory claims.[7] For example, the State alleges discrete and concrete impacts to a host of natural resources, in all corners of the State, including impacts to fish and wildlife (*see, e.g.,* Compl. ¶¶ 146-147, 165), community drinking water sources, (*see, e.g.,* Compl. ¶ 151), surface

---

[7] The State, of course, reserves its right to amend its complaint to include any future contamination discoveries in its affirmative case.

waters (*see*, *e.g.*, Compl. ¶¶ 157), and site-specific impacts not related to AFFF use and resulting contamination (*see*, *e.g.*, Compl. ¶ 144(f)) in addition to the impacts emanating from known AFFF sites (*see*, *e.g.*, Compl. ¶¶ 144(g)).

Further, the State's case squarely does not fit within the parameters set by the Panel for MDL inclusion, and to the degree that some issues of the case may, such similarities are minimal. The MDL's common questions of fact touch the State's case but comprise only a portion of both the actual harm experienced by the State, as well as only a portion of its legal theory. As *parens patriae*, the State alleges continuing public and private nuisance, negligence and on the part of each of eighteen Defendants, in addition to the State's products liability claims. Throughout its case, the State will prove that ordinary and intended use of all of Defendants' PFAS products and their constituent compounds, not merely AFFF alone, resulted in contamination of the State's natural resources, impacting multiple resources in the State – not just drinking water.

The tenuous common thread of the government contractor defense as raised by Defendants is also not enough to merit transfer of the State's case to the MDL, a basis for removal which only two of the eighteen named Defendants assert in the Notice of Removal. While the court overseeing the MDL is currently in the process of determining the bounds of the government contractor defense for a group of defendants also included in the action, its decision will not bind the State, as the government contractor defense, as currently asserted, focuses on the design of AFFF products. It will also not even apply to all Defendants as currently briefed. The State's theory of the case rests on more than just tortious conduct related to design – it notably includes Defendants' failure to warn, their overpromotion, failure to instruct, and other ongoing negligent conduct from which the State seeks relief. Compl. at 59-87.

Importantly, not all, or even a majority, of the claims brought by the State "involve the same mode of groundwater contamination caused by the same product[;]" an important commonality included in the MDL at the direction of the Panel. *In re AFFF*, 357 F.Supp.3d at 1395. While the State's case includes a subset of AFFF claims that are necessarily similar to those included in the MDL, the State's case remains factually, geographically, and legally distinct. These impacts range statewide from various sites (*see, e.g.,* Compl. § V), to the Great Lakes and Mississippi River (*see, e.g.,* Compl. § V.B.) to groundwater resources across the State (*see, e.g.,* Compl. § V.A.), to the State's agriculture industry (*see, e.g.,* Compl. ¶¶ 146, 150); all of which has been investigated by the State (*see, e.g.,* Compl. § VI), an effort that remains ongoing and will surely expand the already-predominant involvement of non-AFFF PFAS contamination.

These site-specific criteria and resulting impacts, coupled with the State's common law legal theory and *parens patriae* authority threaten to predominate any common thread of claims with similar cases already transferred to the MDL; they are unique to state- and potential site-specific characteristics and are brought under theories that are inherently within the purview of state law. To place focus on a subset of claims as justification for inclusion in the MDL is to let the "tail wag the dog;" such focus prevents attention being placed on the larger set of harms suffered by the people of the State and parties responsible for such contamination. Thus, the State's action and its inclusion of "common questions of fact," to those of other cases in the MDL is minimal. *In re AFFF*, 357 F.Supp.3d at 1394.

   **B. Transfer of the State's Case to the MDL is Inconvenient for Parties and Witnesses.**

Transfer of the State's case to the MDL would be inconvenient to the State and would result in prejudice to the State. The scale of sites, scope of contamination, and type of contamination currently at issue in the State's case would make discovery in the MDL unduly

8

difficult as a substantial portion, if not all, of the discovery will necessarily take place within the State of Wisconsin. Not only are the sites and demonstrated harm located within the borders of and in the waters of Wisconsin, but so are the government employees who monitor and undertake responsibility related to the impacted areas and natural resources, as well as the infrastructure, tools, and records by which they accomplish and track these tasks and their progress.

Transfer would also result in the unnecessary imposition of substantial delay, inconvenience, and additional expense on the State, including for necessary travel and case activity from Wisconsin to where the MDL is centered in South Carolina. *See In re Concrete Pipe*, 302 F. Supp. 244, 254 (J.P.M.L. 1969) (Weigel, J., concurring) (noting that discovery concerning "local witnesses, local records and local aspects" of other issues "are best handled by the local United States District Courts").[8] The same is true for the witnesses and counsel for the State.

### C. Justice and Efficiency Are Not Promoted by Transfer of the State's Case to the MDL.

In stark contrast to the intentions of 28 U.S.C. § 1407, the transfer of this matter to the MDL would promote neither justice nor efficiency for all parties involved. The needs of the people of the State of Wisconsin require rapid litigation and adjudication in this matter as the impacts of PFAS contamination are widespread. For example, multiple drinking water wells across the state are presently offline due to elevated levels of PFAS contaminants; the State is further paying for and providing bottled water to entire communities. Compl. ¶ 144(e).

Given the time passage, increased issues, and hundreds of additional cases (concerning thousands of plaintiffs and many different types of plaintiffs), a single judge is no longer the most

---

[8] As referenced previously, the State is seeking remand to the Dane County Circuit Court in Wisconsin and does not, by citation to this case, concede that a federal district court is the proper jurisdiction—just that the locale of the plaintiff, witnesses, and focus of issues remains an important factor for the Panel to assess in determining the appropriateness of transfer.

efficient manner to handle all the major cases brought by sovereign entities, especially a case of this magnitude, and the timeline for the State's case to be heard is exceedingly long. The partial summary judgment motion regarding the government contractor defense was argued just last week, on August 19, and the three bellwether cases are currently slated for further scheduling in December, with the first trial not commencing until March of 2023. Other cases with water providers will go to trial at an even later date. Moreover, sovereign cases are not yet even on the horizon for any case-specific discovery and likely will not be for the foreseeable future. Any benefits that may be realized through coordination can, and most likely will, be realized without transfer of this case to the MDL. Respectfully, any efficiencies in common discovery and disputes have already been achieved in the MDL such that prior work could advance the State's case in Wisconsin, but further MDL activities are unlikely to advance the State's case at all if it sits in South Carolina.

### D. Federal Jurisdiction Has Not Been Established, and Transfer is Premature at Best Because Defendants' Theories of Federal Jurisdiction Lack Force.

Under the federal "government contractor" removal defense, Tyco Defendants claim immunity from liability as (1) they acted under the direction of a federal officer, (2) there was a causal connection between their actions and the official authority, and (3) they have a colorable federal defense to the State's claims. *See* Notice of Removal ¶ 14; *see also*, *Graves v. 3M Co.*, 17 F.4th 764, 769 (8th Cir. 2021). Federal jurisdiction has not been established here because this removal defense as noticed by the Tyco Defendants fails. Although AFFF has been manufactured by a select group of suppliers, including Defendants in the State's case, Defendants can assert the government contractor defense only for a very limited set of products and in extremely limited circumstances (assuming—generously—that it is even a colorable defense in that context).

First, Defendants arguably acted as "federal officers" only to the extent that they sold AFFF to the Unites States government. Tyco Defendants fail to show that their sales to the United States government, the *only* sales relevant for the purposes of federal-officer removal (which Defendants dually assert with their government contractor claims) are anything more than a *de minimis* contributor to the statewide contamination at issue. This is Defendants' collective burden to establish a hook for federal jurisdiction. In so omitting, Tyco Defendants fail show a causal connection between their tortious conduct and the federal authority needed to assert their government contractor defense. *See*, *e.g.*, *Burford v. Monsanto Co.*, No. 4:16CV536, 2017 WL 1315800, at *5-6 (D. Minn. Apr. 10, 2017) (rejecting federal-contractor defense relating to PCB sales as a ground for removal where defendant failed to show that its PCB sales to the federal government were anything more than a tiny proportion of its total PCB sales/production); *see also Baker v. Atl. Richfield Co.,* 962 F.3d 937, 945 (7th Cir. 2020) (noting that "[i]t may make some sense, at least as a matter of policy, to require a removing defendant to allege more than a de minimis amount of federal transactions to establish jurisdiction," but not adopting the position). In support of their claim, the Tyco Defendants note that they manufactured AFFF to MilSpec standards for use at military sites, three of which are referenced in the State's complaint, and that the FAA requires MilSpec AFFF use at Part 139 airports, four of which are named in the State's complaint. Notice of Removal ¶¶ 18-22. At no point do the Tyco Defendants quantify sales to or describe use by the United States government in any detail, and certainly not within the context of overall MilSpec AFFF production and sales. The Tyco Defendants only state that their products appeared on the "Qualified Products List" of suitable products for use by the Department of Defense. *Id.* ¶ 33.

Finally, while each state site impacted by Defendants' conduct and requisite PFAS contamination is not specifically identified, nor the totality of impacts specifically enumerated in the State's Complaint (both due to the widespread and ongoing contamination), the Tyco Defendants' federal enclave claims remain minimally pertinent and fall short of the bar for federal removal, and further, inclusion in the MDL. Most of the sites listed in the Complaint as impacted by PFAS products within the State's borders (and in its bordering waters) are civilian or natural areas, not "federal enclaves" such as military sites. *See*, *e.g.*, Compl. ¶ 144(a), (e), (f). Defendants draw the court's attention most notably to Fort McCoy. Notice of Removal ¶ 39. The Tyco Defendants claim that "Fort McCoy is and has long been a federal enclave[,]" and therefore Defendants have the right to federal removal pursuant to 28 U.S.C. § 1441(a). Notice of Removal ¶¶ 37, 39. In support of their claim, Defendants cite an order from the court overseeing the MDL upholding removal on federal enclave grounds. *See* ECF No. 103 at 3-4. The primary difference here remains the same as it has for the entirety of the State's case: what is minimally applicable to the State's case comprises the majority or the entirety of other cases now in the MDL.

## II. At Minimum, The Panel Should Wait for the Western District of Wisconsin to Rule on the State's Remand Motion.

A conditional transfer order does not suspend pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court. R. Pro. JPML 2.1(d). The district court still has jurisdiction to consider remand while the Panel has a conditional transfer order before it, and motions to remand should be resolved before the Panel acts because it will facilitate litigation in the appropriate forum and therefore conserve judicial resources. *Tortola Rests. v. Kimberly-Clark Corp.*, 987 F. Supp. 1186, 1189 (N.D. Cal. 1997); *Nessel v. Chemguard, Inc.*, No. 1:20-cv1080, 2021 WL 744683 (W.D. Mich. Jan. 6, 2021) ("Generally, motions to remand should be resolved before the panel acts on the motion to transfer so the federal court can

assure itself of jurisdiction before the case transfers to the MDL"); *McGrew v. Schering-Plough Corp.*, No. CIV.A. 01- 2311, 2001 WL 950790, at *3-4 (D. Kan. Aug. 6, 2001) (declining to stay proceedings until the Panel decided transfer order because removal was improper and the court lacked federal jurisdiction).

Despite the Tyco Defendants' curiously-timed motion for a stay of proceedings in the Western District of Wisconsin pending this Panel's transfer decision, filed with the consent of the rest of Defendants, the State continues to assert that the most appropriate order of operations is for this Panel to wait for the Western District of Wisconsin to determine whether removal is appropriate. Further, while the court overseeing this MDL may determine the merits in the government contractor defense in Defendants' pending motion for partial summary judgment, federal officer removal in the State's case remains an improper basis to move the State's case to federal court, and it would remain unresolved for indefinite period of time in the MDL. In its evaluation on the motion for partial summary judgment, the court will <u>not</u> resolve the first two elements of federal-officer removal: whether Defendants are people that acted under the direction of a federal officer, and whether there is a causal connection between their actions and the official authority. *See Graves v. 3M Co.*, 17 F.4th 764, 769 (8th Cir. 2021). Even if these issues were reached by the court, Defendants fail to meet the requisite bar for removal, as explained above. *See supra*, § I.D.  Regardless, the court's decision in the motion for partial summary judgment will not bind the State in its request for remand, as defensive collateral estoppel does not apply.  *See, e.g.*, *Blonder-Tongue Laboratories, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971).

## <u>CONCLUSION</u>

For the foregoing reasons, the Panel should vacate CTO-99 transferring the State of Wisconsin's case to the MDL. In the alternative, and at minimum, the Panel should stay its transfer

decision until the Western District of Wisconsin has determined whether the State's case will even

remain in federal court for the time being.


Dated: August 25, 2022                    /s/ *Stephanie D. Biehl*

                                          **SHER EDLING LLP**

                                          Stephanie D. Biehl
                                          100 Montgomery Street, Suite 1410
                                          San Francisco, CA 94104
                                          Tel.: (628) 231-2507
                                          Email: stephanie@sheredling.com


                                          Joshua L. Kaul
                                          Attorney General of Wisconsin

                                          R. Duane Harlow
                                          Assistant Attorney General
                                          State Bar # 1025622

                                          Bradley J. Motl
                                          Assistant Attorney General
                                          State Bar # 1074743

                                          Sarah C. Geers
                                          Assistant Attorney General
                                          State Bar # 1066948

                                          Post Office Box 7857
                                          Madison, Wisconsin 53707-7857
                                          Tel.: (608) 266-2950
                                          Fax: (608) 294-2907
                                          Email: harlowrd@doj.state.wi.us
                                                  motlbj@doj.state.wi.us
                                                  geerssc@doj.state.wi.us